UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case Number: 21-MJ-478 |
| : | |
| MIKEALE FRAZIER, : | |
| : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S MEMORANDUM
## IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Memorandum in support of its Motion for Pretrial Detention of Defendant Mikeale Frazier under 18 U.S.C. §§ 3142(f)(1)(A) and 3142(f)(2)(A) because there is no condition or combination of conditions that will reasonably assure the safety of any person and the community or assure the defendant's return to court. The defendant was taken into custody on an arrest warrant issued by this Court and has been charged by Criminal Complaint in the United States District Court for the District of Columbia with one crime of violence: Production of Child Pornography, in violation of 18 U.S.C. 2251(a). The defendant is also charged with two counts of First Degree Child Sexual Abuse in violation of 22 D.C. Code 3008(a). An analysis of the factors set forth in 18 U.S.C. 3142 below leads to the conclusion that detention is appropriate.

## FACTUAL BACKGROUND

On May 15, 2021, the Metropolitan Police Department of the District of Columbia (MPDC) was notified that minor victim 1 (MV1), a 14-year-old female, was reported missing from her mother's home in Germantown, Maryland and was possibly in the District of Columbia. MV1's mother reported that an adult man named "Mike" was engaging in sexual conduct with MV1.

MV1's mother provided (202) 487-1363 as Mike's phone number and stated that he lived in the Stanton Glenn Apartment Complex at either 3042 or 3044 Stanton Road, Southeast, Washington, D.C. MV1's mother reported that she was in possession of a video of Mike engaging in sexually explicit conduct with MV1 and had obtained the video from minor victim 2 (MV2), a 14-year-old female, who is friends with MV1.

A search of available law enforcement databases, police reports and public records showed that phone number (202) 487-1363 is associated with MIKEALE FRAZIER ("FRAZIER"), with a date of birth of August 20, 1997. FRAZIER had an associated address of 3042 Stanton Road, Southeast, apartment 103, Washington, D.C. Pursuant to a subpoena to Sprint for subscriber information for (202) 487-1363, that number is subscribed to Marilyn Frazier, 3042 Stanton Road, Southeast, apartment 103, Washington, D.C. and had an effective billing date of August 18, 2016. Based on police reports, Marilyn Frazier appears to be FRAZIER's mother. MV1's mother provided pictures of "Mike," which are consistent with FRAZIER's appearance in mug shots from prior police reports.

MV1's mother was interviewed and stated that MV1 had been running away to the District of Columbia since the beginning of the pandemic in March 2020. MV1's mother became aware that FRAZIER began making contact with MV1 sometime in October or November 2020. Shortly thereafter, MV1's mother had phone and in-person conversations with FRAZIER about MV1 being 14 years old. MV1's mother told FRAZIER not to have a relationship with her daughter. FRAZIER stated that MV1 had lied about her age and he did not know she was a minor. FRAZIER agreed not to continue his relationship with MV1. MV1's mother later learned that MV1 was continuing to communicate with FRAZIER after she reviewed MV1's call and text message logs. After MV1 ran away on May 14, 2021, MV2 reported to MV1's mother that FRAZIER was still

having sexual contact with MV1. MV1's mother also stated that, in early May 2021, MV2 stated that FRAZIER asked MV1 to have sex with MV2 in front of other people and was trying to "pass her off to other guys" in exchange for something. MV1's mother did not specify what MV1 and MV2 were promised in exchange for engaging in sex with each other or with other people. MV2 sent MV1's mother the above-referenced video.

MV1's mother had an Apple Watch that was connected with MV1's iCloud account and contained messages exchanged with FRAZIER using the phone number associated with FRAZIER, (202) 487-1363. The messages range from May 5, 2021 to May 16, 2021. On May 9, 2021, MV1 provided FRAZIER an address in Maryland and FRAZIER replied, "We on the way." Later in the conversation, FRAZIER stated, "Hope ur mother don't know. Hope u not tryna get me locked." There are numerous other conversations in which MV1 provided an address and it appears that FRAZIER went to that location to pick her up. MV1 also sent several videos of herself dancing in a sexually suggestive manner to FRAZIER. On May 13, 2021, FRAZIER stated, "I hear niggas in the background but it's cool. Do u like u always been. U don't listen u can't make no money wit. ME."

On May 17, 2021, MV1's mother provided consent to search her own cellphone and a forensic examination of her cellphone was conducted. The sexually explicit video of FRAZIER and MV1 was extracted and reviewed. The metadata shows that the original video was created on April 13, 2021, at 9:22 PM UTC on an iPhone 11. This is the same type of iPhone MV1 possessed in April 2021. The metadata also indicated that the original video was recorded at the GPS location +38.852194, -76.980000, which is in very close proximity to 3042 Stanton Road, Southeast, Washington, D.C. The video is approximately two minutes and three seconds long. FRAZIER's entire body and face is visible but MV1 can only be seen from the stomach down. FRAZIER is

standing at the edge of a bed. MV1 is laying down on the bed face down with her knees tucked under her, facing away from FRAZIER. The camera captures a profile view of MV1's right side. In the beginning of the video, FRAZIER's hand is visible coming away from the cellphone camera lens, indicating that FRAZIER placed the cellphone into position and pressed record to begin the recording. FRAZIER then turns to MV1 and appears to penetrate her genital area with his penis. MV1's mother identified MV1 in the video and stated, "that's my daughter's body, like, I know her body."

In addition to the video, the phone contained messages MV1's mother and FRAZIER exchanged. The messages contain numerous references to FRAZIER's name as "Mike." MV1's mother continued to tell FRAZIER to stay away from her daughter and that he would be going to jail for having sex with MV1. On April 29, 2021, FRAZIER replied, "u in ur feelings and I Haven't had sexual intercourse with ur daughter snd u the one that called me and told me her real age snd now I'm not ducking her because u told me all the shit she get into."

Based on the interview with MV1's mother, law enforcement interviewed MV2. MV2's interview took place at a doctor's office shortly after she tested positive for a sexually transmitted disease that she believed she contracted from FRAZIER. MV2 stated that she and MV1 were at FRAZIER's apartment in Washington, D.C., along with FRAZIER's brother (MV2 caveated that she does not believe it is his real brother because he calls everyone his "brother"). At some point, FRAZIER's brother left the apartment and the three of them were the only ones inside the apartment. MV2 said that MV1 was giving FRAZIER "head", a slang term for oral sex, on the couch when FRAZIER attempted to force MV2 to perform oral sex on him as well. MV2 stated that she pushed FRAZIER away and went from the living room to FRAZIER's bedroom. FRAZIER followed MV2 into the bedroom and told MV1 to come too. MV2 said that FRAZIER

then went to where MV2 was while MV1 was in another part of the bedroom. FRAZIER began pulling MV2's shirt off and said, "You cute as shit." MV2 told FRAZIER multiple times not to touch her, and he told her to be "quiet." MV2 said to MV1, "This supposed to be your boyfriend, you need to get him." But MV1 only turned to look and then turned her head away. MV2 stated that she believes MV1 is afraid of FRAZIER and described a time when she noticed a big bruise on MV1's arm that MV1 said she got from FRAZIER. MV2 stated that FRAZIER put his hand on her neck and then pulled both his pants and her pants down, as she was telling him that she did not want to do this. MV2 continued to push FRAZIER away, but she said he was able to "put his dick inside me." MV2 stated that MV1 was watching television while this happened. MV2 said she kept pushing FRAZIER until he eventually stopped and went back to MV1 and engaged in sexual activity with MV1. MV2 also stated that FRAZIER's brother returned to the apartment after the rape and stated to FRAZIER something to the effect of, "you going to let me hit her?", which MV2 took to mean FRAZIER's brother wanted to have sex with MV2. The next morning, MV2 said she got up early to leave because she did not want to be there, and she woke up MV1 to tell her they should leave together. FRAZIER put his arm on MV1 and pushed her down when she tried to get up. FRAZIER said that MV1 was not going anywhere.

MV1 told MV2 that FRAZIER wanted her to create an OnlyFans[1] page to post pornography videos for sale. MV2 said the sexually explicit video of MV1 and FRAZIER was supposed to be used to post on the website for money. MV2 believed the video was created on FRAZIER's cellphone and then he sent it to MV1's cellphone, who then sent it to MV2. MV2

---

[1] OnlyFans is a content subscription service based in London, England. Content creators can earn money from users who subscribe to their content. Law Enforcement is aware that OnlyFans is being used by some users to create and sell pornographic content.

stated the video was created in FRAZIER's bedroom in his apartment. MV2 stated that FRAZIER threatened to kill and assault MV1 when he found out that police may be investigating him.

Following consent to search provided by MV2, her cellphone was forensically examined. The sexually explicit video of MV1 and FRAZIER was sent from MV1's cellphone, (240) 772-4824, to MV2's cellphone on April 15, 2021. On the same date, MV1 sent MV2 what appears to be a screenshot from MV1's cellphone. The screenshot depicts message communication with phone number (202) 487-1363 and MV1's cellphone. The screenshot also showed that MV1 sent the above-referenced video of her and FRAZIER engaging in sexual intercourse to FRAZIER.

On May 31, 2021, MV1 was located by Metro Transit Police and taken into custody as a missing child. Law enforcement interviewed MV1, and she stated that she has been in a relationship with FRAZIER since November or December of 2020. MV1 was shown a single confirmation photograph of FRAZIER and confirmed his identity. MV1 stated that FRAZIER engaged in sexual intercourse with her, both before and after he knew she was 14 years old. MV1 said that her mother told FRAZIER her real age over the phone. After FRAZIER learned she was 14 years old, MV1 said FRAZIER told her that they could not be together because he could get arrested, but he continued the sexual relationship anyway.

MV1 stated that FRAZIER did not ask her about recording him engaging in sexual intercourse with MV1, and she only knew he was recording a video when she saw him putting the cell phone in place to make the recording. MV1 said she was fine with FRAZIER recording the video of them having sex as long as he was the only person to have it. MV1 knew that her mother was in possession of the video but did not know how she was able to obtain it.[2] FRAZIER asked

---

[2] MV1 was asked where the video was recorded, and MV1 said she thought the video was recorded at FRAZIER's brother's house in Capitol Heights, Maryland. MV1 was not confronted with the metadata showing that the video was recorded in Washington, D.C.

MV1 about putting the video on the website OnlyFans. FRAZIER stated that he has videos with other women on his OnlyFans account. FRAZIER said he would split the profits from the sex video with MV1 "50/50." MV1 did not believe that FRAZIER posted their sexually explicit video on his OnlyFans account.

MV1 said there was a time when FRAZIER and MV2 engaged in sexual intercourse. MV1 stated that FRAZIER picked up MV1 and MV2 in his car and brought them to his apartment in Washington, D.C. MV1 stated that FRAZIER's brother was at the apartment when they arrived. MV1 said the three of them were in FRAZIER's bedroom and FRAZIER was "doing stuff" with MV1 first. FRAZIER wanted MV2 to join in but MV2 did not want to. MV1 did not hear MV2 say "no" but she heard FRAZIER say, "Why?," and that's how MV1 knew that MV2 had said no. MV1 said FRAZIER then did have sexual intercourse with MV2 while she was on the other side of the room in bed. MV1 stated that after they were done, the three of them had sex together.

MV1's mother advised that MV1 lost her cellphone with phone number (240) 772-4824. When MV1 was located, she had an iPhone 11 with the phone number (240) 729-9598. This iPhone was the cellphone linked to the Apple Watch provided by MV1's mother previously, and both the phone and watch had the same iCloud account, zaevion519@gmail.com.  MV1's mother, who purchased the phone and pays the monthly bills on it, provided consent to search the phone, and a forensic examination was conducted on MV1's cellphone. There were no messages with the phone number (202) 487-1363, not even the previous messages that were located on the Apple Watch. It appears that these messages were deleted from the cell phone. The iPhone 11 had no linked Apple Watch associated with it, and it appeared that the Apple Watch had been unpaired from the device. The iPhone 11 did not have the messages exchanged between MV1 and MV2, nor was the sexually explicit video of FRAZIER and MV1 located on the device. The iPhone 11 had the sexually

suggestive videos of MV1 dancing that she had sent to FRAZIER and were seen on the Apple Watch. There was no record on the iPhone 11 of these videos being sent to FRAZIER.

Pursuant to a subpoena, Apple provided the account information for the iCloud account connected to the phone (202) 487-1363. The account was registered in FRAZIER's name and the name of his mother. The account associated with the phone number (202) 487-1363 was mikealefrazier88@icloud.com. The listed address in the account was 3042 Stanton Road, Southeast, Washington, D.C.

Pursuant to a subpoena, Sprint provided call detail records for the phone number (202) 487-1363 from September 1, 2020, to May 18, 2021. During this time frame, FRAZIER had 523 unique phone contacts with MV1's cellphone number (240) 772-4824 and 92 unique contacts with the MV1's cellphone number (240)729-9598; FRAZIER also had 45 unique contact with MV1's mother.

## ARGUMENT

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence.

The crime of Production of Child Pornography, in violation of Title 18 United States Code Section 2251(a), is a crime of violence involving a minor victim, which under 18 U.S.C. § 3142(e)(2) & (3)(E) creates a rebuttable presumption that the defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to

assure the safety of any other person and the community. This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released").

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

For the reasons that follow, the government submits that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community and that the defendant should therefore remain detained pending trial.

### A. The Nature and Circumstances of the Offense Charged

FRAIZER is charged with Production of Child Pornography and two counts of First Degree Child Sexual Abuse. Production of Child Pornography is a violent offense whose severity is illustrated by the mandatory minimum sentence that attaches to it. Production of Child Pornography carries a fifteen year mandatory minimum sentence.

Moreover, the defendant's conduct in this matter is particularly egregious. The defendant made a video of himself engaging in sexually explicit conduct with a minor child for the purpose of posting the video on OnlyFans to make money from the video. The defendant engaged in this conduct after the minor child's mother made it clear to the defendant that she was a minor. Moreover, in his conversations with MV1 as well as the text messages detailed above, the defendant makes it clear that he was aware that his conduct was criminal, yet, he continued to engage in this conduct. Furthermore, the defendant previously caused a bruise on MV1 and threatened to kill and assault her when he found out that police may be investigating him.

### B. The Weight of the Evidence Against the Defendant

As described above, the evidence against the defendant is overwhelming, including irrefutable electronic evidence. The video clearly depicts the defendant's face and the metadata establishes that the video was filmed in the District of Columbia. Additionally, MV2's statement that the defendant engaged in assaultive conduct against her is partially corroborated by MV1's statement to law enforcement. MV1 corroborated that the assault against MV2 occurred at the

defendant's residence and that the defendant's brother was initially present at the residence that day. MV1 also corroborates that the defendant was "doing stuff", which appears to be her way of stating that he was engaging in sexual conduct with MV1, prior to the assault against MV2. Moreover, MV1 stated that she saw the defendant approach MV2 and heard a conversation that indicated to her that MV2 did not want to engage in sexual activity with the defendant, however, the defendant had intercourse with MV2.

### C. The History and Characteristics of the Defendant

The defendant has a significant criminal history involving violent offenses. In 2020, the defendant was convicted of Contempt of a CPO/TPO in two separate cases in the Superior Court of the District of Columbia. He is currently on supervision in both of those cases. In 2019, the defendant was convicted in the Superior Court of the District of Columbia of robbery and of simple assault and destruction of property in a separate, domestic violence case. The defendant was sentenced to a period of probation for in both cases. He is still on supervision in the domestic violence case, and his probation in the robbery case expired unsatisfactorily. In 2017, the defendant was convicted in the Superior Court of the District of Columbia for simple assault and attempted threats to do bodily harm. In that case, the defendant was sentenced to a period of probation, and his probation expired unsatisfactorily.

The defendant's criminal history indicates that he would be a danger to the community if the Court releases him. Moreover, his failure to successfully complete probation in prior cases as well as his contempt convictions indicate that he has a history of not abiding by court orders, and may not abide by any orders the Court sets for his release.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

The evidence here establishes that the defendant represents a danger to the community.

The defendant sexually abused two minor children in this case. During the time in between when law enforcement last interviewed MV1 and when the defendant was arrested, MV1's mother reported that the defendant spent time with the MV1 again. Therefore, if the defendant is released back into the community, he presents a significant risk to the safety, not just of the community in general, but specifically to MV1 and MV2.

## **CONCLUSION**

For all of the reasons set forth above, and any other reasons set forth at any hearing on this issue, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

WHEREFORE, the government respectfully requests that the court grant its motion for detention of the defendant.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY

By:  _____/s/_____
JANANI IYENGAR
Assistant United States Attorney
NY State Bar No. 5225990
U.S. Attorney's Office
555 4th Street, N.W.,
Washington, D.C. 20530
202-252-7760
Janani.iyengar@usdoj.gov